### HIGHLAND BOY GOLD MIN. CO. v. POUCH.

(Circuit Court of Appeals, Eighth Circuit. May 5, 1903.)

No. 1,832.

1. APPEAL—RIGHT TO ALLEGE ERROR—ESTOPPEL.

Where, in an action for injuries to a servant in a mine, defendant permitted him to testify, without objection, on both direct and cross-examination, that defendant had promised to fix the stope in which he was injured by alleged insufficient timbering, it could not object on appeal to a statement on re-examination that on the day preceding the accident he had called the attention of the shift boss to the fact that certain timbers in the stope were "riding or taking weight," and that the boss promised that he would have "the doubling up man come up and fix it."

2. MASTER AND SERVANT—INJURIES TO MINER—INSUFFICIENT TIMBERING—EVIDENCE.

Some time prior to the accident the timbers in a mine stope in which plaintiff, a miner, was injured by caving, showed evidence that they were

bearing an excessive weight and might give way. When that stope was combined with another the result had been to leave an extensive overhanging wall, which pitched at an angle of 45 deg., supported only by square sets and by a pillar of decomposed sulphide ore. Such supports were insufficient, and about a week prior to the accident the pressure on the pillar of ore was so great that it had bulged and pushed out of place a number of poles standing at its base, and the hanging wall in the other stopes of the same mine had previously caved in. *Held*, that whether defendant had exercised reasonable care in timbering the stope in which plaintiff was injured was a question for the jury.

8. SAME—ACTION—INSTRUCTIONS—SAFE PLACE TO WORK.
Where plaintiff, a miner, was injured by the falling of a wall in the mine in a completed chamber, alleged to have resulted from insufficient timbering, and it did not appear that at the time plaintiff was doing any work which would render the place insecure, an instruction that defendant was not bound to keep the stope where plaintiff was working continuously safe, on the theory that the master is not required to keep the place where a servant works at all times safe, where the doing of the work is of such a character as temporarily renders the place insecure, was properly refused as inapplicable.

4. SAME—RES IPSA LOQUITOR.
Where the court charged that plaintiff could not complain or recover because of defendant's negligence in failing to properly secure any other part of the mine than that in which plaintiff was injured as alleged, and that defendant was not an insurer of plaintiff's safety, but was merely bound to exercise ordinary care for plaintiff's safety under the circumstances, it was not error for the court to refuse to specifically charge that the happening of the accident, of itself, was not evidence of negligence.

5. SAME—PROMISE TO REPAIR DEFECT—RELIANCE BY SERVANT.
Where evidence tended to show that the shift boss of a mine, on being notified that certain of the timbers in the stope in which plaintiff was injured were taking weight, not only promised to erect additional supports, but assured plaintiff that it was perfectly safe for him to remain there and continue his work, such evidence justified an instruction that if plaintiff called the attention of the shift boss to the fact that some of the posts were taking weight, and that the boss promised to remedy the defect, and plaintiff continued to work because of such promise, he did not assume the risk from such defect.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Utah.

J. E. McKeighan (M. F. Watts, on the brief), for plaintiff in error.
Charles Dey (C. W. L. Stevens, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. On October 25, 1901, Albert Pouch, the defendant in error, was in the employ of the Highland Boy Gold Mining Company, the plaintiff in error, as a machine man, his duty being to operate a drilling machine at such places within the defendant's mine as he was directed to work. On the day last aforesaid he was ordered to take his drill to the eighth floor of "Little 2 Stope," in the fifth level, and to work at that place. While he was at that point the stope caved in, and in his efforts to escape from the falling rock and timber he was severely injured. He sued the company in consequence of these injuries, alleging that it was negligent in failing to properly secure and timber the stope, and in permitting the timbers therein to become worn and defective. The answer was a general

denial and a plea of contributory negligence and assumption of risk. There was a lengthy trial to a jury, which resulted in a verdict for the plaintiff below in the sum of $4,100.

Numerous errors were assigned in the trial court to the admission and exclusion of evidence, but only one error of that kind appears to be relied upon in this court for the purpose of obtaining a reversal of the judgment, and the other errors of that class are obviously unimportant and immaterial. The plaintiff testified as a witness, and on his re-examination stated, in substance, that on the day preceding the accident he had called the attention of the shift boss to the fact that certain timbers in Little 2 Stope "were [as he expressed it] riding or taking weight," and that when the attention of the shift boss was thus called to the fact he said he would have "the doubling up men come up and fix it." This last statement was objected to by the defendant company as irrelevant and incompetent, because the plaintiff had not specially pleaded such a promise on the part of the company to fix the stope, but had only pleaded generally that the stope was not properly timbered. We think that this objection, whatever may be its merit (and we deem it unnecessary to express any opinion on that point), cannot avail the defendant on appeal, because the witness had testified to the very same facts, both on his direct and cross-examination, and had done so without objection. He had further testified that, when the attention of the shift boss was called to the fact that the timbers were taking weight, the shift boss assured him that he would have "that fixed," and that it was "perfectly safe to work there." No objection was made to this evidence nor was any motion made to exclude it. Moreover, the witness was cross-examined on the subject by the defendant's attorney, and repeated the statement in substance. It must be held, therefore, that the objection to the evidence in question, even if it would have been tenable if made at the proper time, was waived, and that the repetition of the statement on re-examination cannot be esteemed a material error.

In the elaborate brief which has been filed by the plaintiff in error considerable space is devoted to the proposition that the trial court erred in failing to direct a verdict in favor of the defendant company. In support of this contention it is urged, in substance, that the caving in of Little 2 Stope was one of those unusual, unexpected, and sudden occurrences which could not have been foreseen and guarded against by the exercise of such reasonable care and diligence as the defendant was required to exercise, and that there was in fact no evidence tending to establish culpable negligence. We think, however, that the testimony contained in the bill of exceptions does not sustain this contention, and that there was evidence tending to show, and from which a jury might well conclude, as it did conclude, that by the exercise of that amount of prudence which the mining company was bound to exercise the caving in of the stope and the consequent injury might have been avoided. At all events, the case was not one in which a court could declare, as a matter of law, that the mining company was free from all blame, but was rather a case in which the jury was entitled to determine that issue. There was testimony which tended to show that for some

time prior to the accident the timbers in Little 2 Stope showed evidence that they were bearing an excessive weight and might give way; that when Little 2 Stope was combined with another stope known as "No. 2 Annex" the result had been to leave an extensive overhanging wall, which pitched at an angle of about 45 deg., that was only supported by square sets, as they are termed, and by a pillar of decomposed sulphide ore; that such supports were insufficient to support the hanging wall; and that about a week before the accident the pressure on this pillar of decomposed sulphide ore was so great that it had bulged and pushed out of place a number of posts standing at its base. There was also evidence that the hanging wall in other stopes of the same mine had previously caved in, which fact, as it would seem, ought to have warned the defendant company that considerable care and watchfulness was necessary to prevent other stopes, particularly No. 2, from caving in. Without going more into detail as respects the nature of the evidence, it will suffice to say that after reading it attentively we are satisfied that it was ample to sustain the charge of negligence, and that the decision of this question was properly left to the jury.

It is next urged that the trial court erred in not giving two instructions which were asked to the effect that the defendant was not bound to keep the stope where the plaintiff was working continually safe, and in instructing the jury, as it did, that it was the defendant's duty "to use ordinary care to furnish the plaintiff a reasonably safe place in which to do his work so as not to unreasonably expose him to unnecessary danger in the discharge of his duties." In support of this contention counsel for the plaintiff in error invoke the doctrine, which has been announced by this and by other courts, that the rule of law requiring a master to exercise ordinary care in providing his servants with a reasonably safe place in which to work, does not compel the master to keep the place where the servant works at all times safe when the work being done is of such a character as necessarily renders the place temporarily or from time to time insecure. Gulf, Colorado & Santa Fé Ry. Co. v. Jackson, 12 C. C. A. 507, 65 Fed. 48; Finalyson v. Utica Mining & Milling Co., 14 C. C. A. 492, 67 Fed. 507; Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440. We think, however, that the rule of law thus invoked has no application to the case in hand. Little 2 Stope, which caved in and caused the injury, was in a certain sense a completed chamber, under ground, through which men were expected to pass, and in which they were required to work. Moreover, the plaintiff's injuries were not occasioned by any work which he was doing which made the place insecure. As the stope was a completed chamber in which employés of the mining company were expected to work, it was the company's duty to exercise ordinary care in timbering it so that it would not collapse and that they might work therein with ordinary safety. The complaint made in the present instance is that this duty was not faithfully performed, and that if the proper supports for the hanging wall had been set it would not have caved in as it did. It may be conceded that if the plaintiff below had been injured while drilling and blasting, by the fall of a rock in an unfinished part of the

stope where he was at work, the principle of law invoked would be applicable; but as he was not injured in this manner, but was injured by a general collapse of the entire stope, which might have been guarded against by sufficient timbering, the court was justified in giving the instruction which it did give of its own motion and in refusing those that were asked.

Error is assigned because the trial court did not specially charge the jury, as it was requested to do, that the happening of the accident was not any evidence of negligence on the part of the defendant; also because it did not charge the jury that if the caving in of the stope was sudden and unusual, and could not have been foreseen in the exercise of ordinary care, then the plaintiff could not recover.

With reference to these contentions it is to be observed that the court did instruct the jury, in substance, that the particular negligence of which the plaintiff complained was the failure of the defendant company to place proper supports or timbers in what is known as Little 2 Stope; that it was for the jury to determine whether, in point of fact, the supports in that stope were sufficient or otherwise; that the case as made by plaintiff related only to stope No. 2; that the plaintiff could not complain or recover because of the defendant's negligence in failing to properly secure some other stope; and that the jury should only consider the condition of the other stopes in the mine from their relation to No. 2 stope, and determine, from its position in the mine, what, in the exercise of ordinary care, the defendant company ought to have done to render it reasonably secure. It further instructed the jury that the mining company was not an insurer of the plaintiff's safety, but was merely bound to exercise ordinary care, and that that meant such care as a prudent man would exercise under the same circumstances. The verdict of the jury, under such instructions, plainly negatives the hypothesis of fact in one of the refused instructions, that the caving in of the stope was wholly fortuitous and due to causes that could not have been foreseen, since the jury evidently found that the cause of the collapse was one that might have been discovered by the exercise of ordinary care and guarded against. The refusal of this request, based, as it was, upon an hypothesis of fact which the jury manifestly discarded, cannot be regarded as a material error.

Concerning the other refused instruction this may be said: It is doubtless proper, in some cases, to advise a jury that the mere happening of an accident is no evidence of negligence. An instruction of that kind is in the nature of a commentary upon the evidence. But we doubt the propriety of giving an instruction of that character in such a case as the one in hand, and are of the opinion that the refusal of such an instruction in a case of this kind ought not to be regarded as a material error. Excavations underneath the ground, such as stopes and levels in mines, can be made safe by the exercise of proper care in timbering them, and they are made safe so that men work therein without much danger. They do not fall when the walls thereof are properly supported by timbers or other supports. When, therefore, an excavation, which has been completed and timbered, collapses without any seismic disturbance or an explosion of any sort, men will naturally infer that the collapse was

caused by insufficient supports, there being no other assignable cause. Under such circumstances, if a jury is instructed that the collapse of a stope or level is no evidence of negligence on the part of any one, such an instruction might be understood as meaning that the collapse is no evidence whatever that the supports or timbering were in any respect defective or insufficient. Instead of giving an instruction of that kind, which may mislead, we think it is preferable to leave the jury at liberty to find, in view of all the evidence, whether the defendant failed to take any reasonable precaution which it ought to have taken to prevent the collapse—in other words, whether, in view of all the testimony, the defendant should be esteemed guilty of culpable negligence. Very plain and specific directions on this subject were given by the learned trial judge in the case in hand, and we think that the instructions given were sufficient.

It is finally assigned as error that the trial judge instructed the jury, in substance, that if the plaintiff called the attention of the shift boss to the fact that some of the posts were taking weight, and the shift boss promised to remedy the defect, and the plaintiff continued to work because of this promise, then he could not be said to have assumed the risk resulting from the particular defect which he had pointed out. It is urged that this instruction ought not to have been given, because there was no evidence that the plaintiff did continue to work because the shift boss promised to remedy certain defects in the timbering that were called to his attention. This contention on the part of the plaintiff in error is not supported by the testimony. There was testimony tending to show that the shift boss not only promised to erect additional supports when his attention was called to the fact that certain posts in one part of the stope were taking weight, but that he also assured the plaintiff that it was perfectly safe for him to remain where he was. It is a fair inference, from the testimony on this point, that these assurances had weight with the plaintiff, and induced him to continue at work until the collapse occurred. We think, therefore, that this exception to the charge is without merit.

After an attentive consideration of the record, we conclude that the case was fully and fairly tried below, and that no error was committed which would justify this court in disturbing the judgment. It is accordingly affirmed.

SANBORN, Circuit Judge (dissenting). In my opinion the judgment in this case ought to be reversed because the only cause of action pleaded was that the plaintiff was ignorant of the defects, danger, and risk from which he suffered, and the court charged the jury that he might recover upon proof that he was fully aware of them, and that the shift boss had promised to remove them, although he had pleaded no such cause of action. The error of the court in the trial below lies deeper than the admission of evidence, because complete proof of knowledge by the plaintiff of the defects in the timbering of the mine, of the risks and dangers therefrom, of a promise of the master to remedy them, and of reliance upon that promise by the plaintiff, not

only failed to constitute any cause of action set forth in this case, any ground of recovery, or any exception from the general rule that the servant assumes the risks he knows that was alleged; but, on the contrary, it conclusively negatived the existence of the only cause of action which the plaintiff pleaded in his complaint, to wit, that he was ignorant of the defects and dangers which resulted in his injury.

The general rule of law is that a servant assumes the ordinary risks and dangers of his employment which are known to him or which would have been known by the use of reasonable care to a person of ordinary ability in his situation. The plaintiff was drilling in the roof of the stope which collapsed. Under this general rule the legal presumption was that he had assumed the risk of the accident which befell him, and that the master was not liable to him on account of it. To this general rule there are two exceptions which are utterly inconsistent with each other. They can no more exist and apply to the same case at the same time than two solid bodies can occupy the same space at the same time. The existence and application of one of them to a given case is a demonstration that the other does not and cannot apply to it. One of these exceptions is that a servant does not assume the risks of his employment which he does not know, and which a person of ordinary ability would not have known by the exercise of reasonable care, and for injuries resulting from such risks which were caused by the negligence of his master he may recover. The other exception is that for a limited time after the promise an employé does not assume the risks and dangers of his service which he knows, which the master has promised to immediately remove, and the risk of which he takes in reliance upon that promise, provided always that the danger is not so imminent that a person of ordinary capacity in the exercise of ordinary care would not rely upon the promise and continue the work. Ignorance of the risks and dangers is a sine qua non of the former and knowledge of them of the latter, exception. Counsel for the plaintiff knew these things when they drew their complaint and tendered their issue to this defendant. They took their choice of the two exceptions, and alleged that the plaintiff was ignorant of the defects, risks, and dangers from which he suffered, that the defendant was aware of them, and that its negligence caused the plaintiff's injury. They did not allege that the plaintiff was aware of them, that the defendant promised to remove them, or that the plaintiff relied upon any such promise. The defendant interposed a denial to the plaintiff's averments. What, then, was the issue for trial? It was whether or not the plaintiff had escaped from the general rule that he assumed the risks of his employment by virtue of the fact, which he alleged, that the risks and dangers were extraordinary and that he was ignorant of them. Now, concede that evidence crept into the case without objection to the effect that the plaintiff knew of all the defects and risks of the employment, and that the shift boss had promised to remove them before the accident. Such evidence established no cause of action in this case, because the plaintiff had pleaded no such cause of action. A recovery must be had secundum allegata et probata, and proofs without allegations are as futile as allegations without proofs. The only effect of evidence of

this character was to demonstrate the fact that the cause of action which the plaintiff had pleaded did not exist, that he was not, as he had alleged, ignorant of the defects, risks, and dangers from which he suffered, but that he was fully aware of, and consequently assumed, them. Nevertheless, the court, over the objection and exception of the defendant, charged the jury that if the plaintiff knew the defects, risks, and dangers, if the shift boss had promised to remove them and if he relied upon that promise, he could recover in this action. This charge is, in my opinion, radically erroneous, because no such cause of action as that founded upon this supposition was pleaded in this case, and no such issue was tendered to the defendant for trial, because the maintenance of this theory by evidence demonstrated the fact that the cause of action which the plaintiff pleaded did not exist, and entitled the defendant to a verdict, and because there is no evidence in this record that the plaintiff ever relied on, or was in any way influenced by, the promise of the shift boss; but the testimony of the plaintiff is that he knew that the timbers were taking weight, that he knew all that any one knew, and that he did not think that the place was dangerous. Malm v. Thelin, 47 Neb. 686, 691, 66 N. W. 650; Becker v. Baumgartner, 5 Ind. App. 576, 32 N. E. 786; Bogenschutz v. Smith, 84 Ky. 330, 1 S. W. 578; International & G. N. R. R. Co. v. Doyle, 49 Tex. 190; Louisville, N. A. & C. R. Co. v. Sandford, 117 Ind. 265, 19 N. E. 770; Hayden v. Smithville Mfg. Co., 29 Conn. 548; Stephenson v. Duncan, 73 Wis. 404, 41 N. W. 337, 9 Am. St. Rep. 806; Coal & Car Co. v. Norman, 49 Ohio St. 598, 32 N. E. 857; Peerless Stone Co. v. Wray, 143 Ind. 575, 42 N. E. 927; Epperson v. Postal Telegraph Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Buzzell v. Laconia Mfg. Co., 48 Me. 113, 77 Am. Dec. 212. In Malm v. Thelin, 47 Neb. 686, 66 N. W. 650, the Supreme Court of Nebraska said at page 691, 47 Neb., page 651, 66 N. W.:

"The presumption is that a servant employing machinery obviously defective has assumed the risk occasioned by the use of such machinery, and in order to recover he must rebut that presumption, and in order to rebut it he must not only prove, but he must plead, the facts which create an exception to the rule—as, for instance, that on complaint to the master a promise was made to remove the defect and the machinery was used relying upon that promise. In Missouri P. R. Co. v. Baxter, 42 Neb. 793, 60 N. W. 1044, a judgment was reversed because the petition did not plead such exceptions; and in Dehning v. Detroit Bridge & Iron Works, 46 Neb. 556, 65 N. W. 186, an amendment had been required in a similar case before the plaintiff was permitted to introduce evidence of such exceptions."

In Becker v. Baumgartner, 5 Ind. App. 576, 32 N. E. 786, the complaint was predicated upon ignorance of the danger on the part of the plaintiff, and the proof was of knowledge, a promise, and reliance thereon. The court said:

"A recovery can only be upheld secundum allegata et probata. The complaint is predicated, though imperfectly, upon the theory that appellee was ignorant of the danger, and this will not be supported by proof that he did know all about it, but remained in the service upon appellant's promise to provide a remedy. Such facts would constitute a special contract, creating an exception to the general rule, and can only be proved when specially pleaded."

This judgment should be reversed because it rests upon a cause of action that was never pleaded, and upon the determination of an issue that was never tendered to the defendant. Even after verdict a judgment upon a cause of action which was not pleaded in the complaint should be reversed. But in the case at bar ample objections and exceptions were taken when the court gave its charge to the jury.

2. Again, it was error for the court to refuse to charge, as it did, that the mere happening of the accident raised no presumption that the defendant was guilty of negligence which caused the injury to the plaintiff. The rule is well settled that the breakage or fall of machinery, platforms, buildings, stopes, caves, and structures of every kind in the use of employés raises no presumption that the injury resulting to the latter was caused by the negligence of their employers; but the burden of proof is upon the servants to show, by evidence outside the break or fall, not only that it was caused by a fault or defect of construction, but also that the employer knew of the fault or defect, or that a person of reasonable care, skill, and prudence would have known of it, and would have anticipated the fatal result which followed. The rule res ipsa loquitur has no application to such a case, and that fact ought to have been stated to the jury. Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201; Railroad Co. v. Stewart, 13 Lea, 432, 438; Dobbins v. Brown, 119 N. Y. 188, 194, 23 N. E. 537; Breen v. Cooperage Co., 50 Mo. App. 202, 213, 214; Blanchette v. Mfg. Co., 143 Mass. 21, 22, 8 N. E. 430; Jones v. Yeager, 2 Dill. 64, Fed. Cas. No. 7,510; Mining Co. v. Kitts, 42 Mich. 34, 37, 39, 41, 3 N. W. 240; Early v. Railway Co., 66 Mich. 349, 352, 33 N. W. 813; Sorenson v. Pulp Co., 56 Wis. 338, 341, 344, 14 N. W. 446; Huff v. Austin, 46 Ohio St. 386, 387, 390, 21 N. E. 864, 15 Am. St. Rep. 613; Epperson v. Cable Co. (Mo.) 50 S. W. 795, 807; Searles v. Railway Co., 101 N. Y. 661, 662, 5 N. E. 66; Smith v. Bank, 99 Mass. 605, 612, 97 Am. Dec. 59.

For these reasons it seems to me that the judgment below ought to be reversed, and a new trial granted.