NICHOLAS LASSASSO v. JONES BROTHERS COMPANY.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed February 8, 1915.

*Master and Servant—Injury to Servant—Master's Liability—
Safe Working Place—Change Made by Work—Notice—
Fellow Servants—"Vice-Principal"—Negligence of Fore-
man—Servant's Knowledge of Danger—Contributory Negli-
gence—Reliance on Master's Due Care—Dedirect Examina-
tion—Instructions to Jury—Issues and Evidence—Ignor-
ing Plaintiff's Right.*

In reviewing the denial of defendant's motion for a directed verdict,
the evidence must be viewed in the light most favorable to
plaintiff.

It is the duty of the master to exercise the care of a prudent man
to provide his servant with a reasonably safe working place, but
that rule does not apply where the servant's work is such that
its progress constantly causes changes in the condition of his
working place, for in that case the resulting hazards are regarded
as the ordinary dangers of his employment.

A quarry foreman who, in the absence of the superintendent, had
full charge of the operation of the quarry, was entrusted with the
performance of the master's duty in respect of furnishing a safe
working place, and so in that respect was a vice-principal, and
notice to him of the dangerous condition of a header was notice
to the master; and for his negligence in not remedying the defect
so as to make a reasonably safe place before sending a servant
to work in that vicinity the master is liable.

In a quarryman's action for injuries from loose stones falling from
the face of a header, after a blast, *held*, on the evidence, that his
knowledge of the danger, his contributory negligence, and his
foreman's negligence in not making a safe working place were
questions for the jury.

In the absence of knowledge or information to the contrary, a servant
has the right to assume that his master has exercised due care
to provide the servant a reasonably safe working place.

In a quarryman's action for injuries from loose stones falling from the face of a header after a blast, where the evidence tended to show that the unsafe condition was allowed to continue because of the neglect of a vice-principal, rather than through the negligence of the powderman, a fellow servant, it was not error to allow the powderman to testify that he did not stay and remove the loose stones because the vice-principal told him to go to another part of the quarry.

In such case, where the powderman on cross-examination said that after a blast he generally removed the loose stones, it was within the court's discretion to allow him on redirect examination to explain why he did not do so in this instance.

The master's duty to exercise due care to furnish his servants a reasonably safe working place is imposed by law, and for any negligence in the performance of that duty by any person to whom it is delegated the master is responsible.

In a quarryman's action for injuries from loose stones falling from the face of a header after a blast, defendant's requested instruction that it would not be liable for the acts of a fellow servant who, in the course of his work, necessarily made the place unsafe for plaintiff was properly refused, if for no other reason, for failure to require consideration of defendant's knowledge or information of the unsafe conditions so produced, and of its duty before sending plaintiff to work there; and for the same reason its requested instruction concerning transitory risks and dangers was properly refused, where the dangerous condition, to the knowledge of the vice-principal, had existed since the middle of the preceding afternoon, without any effort to remedy it.

Defendant's requested instruction that, if plaintiff and defendant had equal means of knowing the result of the blast and the condition of the header, plaintiff could not recover on the ground of defendant's failure to furnish a safe working place, was properly refused, because it ignored plaintiff's right, without knowledge or information of the danger, to assume that defendant had done its duty in respect of a safe working place.

Defendant's requested instruction that, if the danger was equally obvious to plaintiff and defendant, they were upon an equality, and defendant was not liable, was properly refused, because it ignored the evidence tending to show that defendant's attention was called to the danger, and that plaintiff had no knowledge of

it, and the evidence that plaintiff had notice of the danger just before the accident.

In a servant's action for injury, wherein both the declaration and the evidence showed that plaintiff relied only on the negligence of the master in not furnishing a reasonably safe working place, defendant's requested instruction that plaintiff could not recover for failure to warn him that loose stones were liable to fall was properly refused.

CASE for negligence.    Plea, the general issue.    Trial by jury at the March Term, 1913, Washington County, *Fish,* J., presiding.    Verdict and judgment for the plaintiff.    The defendant excepted.

The evidence tended to show that defendant, a corporation, owns and operates two granite quarries in the town of Barre, one of which is called the "dark quarry," and is where the accident in question occurred; that before and at the time of the accident defendant had a superintendent of its quarries, and under him one Murray was foreman on the "dark quarry," having full charge there, including hiring and discharging help, in the absence of the superintendent; that the plaintiff, a journeyman quarryman of long experience, who had been working on that quarry not quite a year, was then employed there as a "head derrickman" in charge of a derrick, and had working under his direction one, two, or three men; that this derrick was used in removing stones from the bottom of the quarry to the yard where the good stones were cut into stock, and bad stones were sent to the dump; that in the process of quarrying, the granite had been taken out sheet by sheet where the accident occurred, to a depth of about twenty feet from the top of the header, so called, which header was directly between two sheets of solid granite, one in front and one back of it, and it formed the bank of the quarry; that previous to about twenty days before the plaintiff was injured, the top of the granite back of the place of the accident was level with the top of the header, but at that time the top layer of granite in front of the header was quarried, leaving the header sticking up about two feet above the sheet of granite in front of it, and slanting towards it, the granite back of the header being undisturbed; that the sheet of granite thus left in front, it being ten or twelve feet in width, measuring from the header,

and about twenty feet in depth, so far projected over that a person standing at its base would have the wall overhanging him; that the top of this sheet sloped about four feet in twelve towards the quarry, making such a slant that stones falling from the header upon the slope, would slide or bound into the bottom of the quarry below; that this header was composed of loose or shaley or rotten stones, portions of which might sometimes fall therefrom, unless something be done to prevent it; that between two and three o'clock in the afternoon of the day before the accident, a powderman prepared and set off a blast in the top of the sheet of granite in front of the header, and nine or ten feet back from the front edge of the granite, for the purpose of moving the sheet forward from the header, so it could be cut into pieces and removed; that an inspection by the powderman and the foreman immediately after the blast, showed that the sheet of granite had been moved as contemplated, and that the blast had also caused the shale or loose stones in the header to bulge forward; that it is a part of the duties of a powderman after firing a blast, to look after the results, and if anything loose is hanging over, to take it out of the way, if he can; that after the blast in question was fired, the powderman, in the performance of this duty, reached with a bar, as well as he could from the place where he was standing, and tapped these bulging stones, at the same time telling the foreman, who was present, that it was not right—did not look safe; that without the defect being remedied, the foreman immediately ordered the powderman to go to another part of the quarry to fire some holes there; that from the bottom of the quarry at and in the vicinity of the place of the accident, it was impossible to see the header sticking up above the solid stone, because of the projecting wall, and it was also impossible to see the bulge in the header, or to know or appreciate any danger connected therewith; that if one stepped away from the solid wall in order to get a better view of what was back of it at the top and above it, one could not see the header or any danger arising therefrom, because the floor of the quarry, a short distance in front, fell about twenty-five feet; that one working in the yard (which was some three hundred feet from the place of the accident and on the opposite side of the quarry), could see this header sticking up two feet or so above the granite in front of it, but at that distance one could

34

not see the bulging condition of the stones nor the danger connected therewith; that at the time of the blast the day before the accident, the superintendent was not on the quarry, and consequently the foreman had full charge of the work there and directed that the blast be set off at the place in question; that the next morning, between eight and nine o'clock, the foreman ordered the plaintiff to go into the corner of the quarry just in front of said solid wall and below the place where the blasting had been done which loosened the stones in the header as above stated, to chain some stones lying there, which the foreman had marked with chalk, and remove them by means of the derrick to the yard, the foreman going with the plaintiff to the place of the stones and showing him what to do; that a driller had worked there on these stones the day before, and the fair inference is that it was to put them in shape to be lifted out by derrick; that the plaintiff, though he knew a blast had been fired in that direction, did not know just where the blast was and did not know the result of it, neither could nor did he see the dangerous condition of the header, caused by it; that as the plaintiff and his helper came into the part of the quarry where the marked stones were lying, they looked up at the wall to see if there were any loose stones, but saw none—it looked pretty safe; that from where they were doing their work, the header could not be seen back of the sheet of granite, nor could it be seen from any part of the quarry where the plaintiff had been working since the top stone was removed, except he could see the header from the yard, but could not see whether it was overhanging or not, or dangerous; that about twenty days before his injury, the plaintiff went on top of the header to pull down the top layer of granite then taken off in front of it as before stated, and though after taking this off the header was left sticking up about two feet and slanting toward the place of the accident, it was tight on each side, nothing loose hanging over; that at the time in question the plaintiff and his helper had been at work chaining one of the marked stones for two or three minutes, when the stones in the face of the header, loosened by the blast as above described, suddenly fell out and came down where they were working, injuring the helper slightly and the plaintiff seriously; that they heard no warning of any danger, and the plaintiff did not know of or appreciate any danger arising from

the bank of the quarry above him; that of the different classes of workmen upon this quarry, one class do the drilling, another class attend to the blasting, and still another class handle the derricks; that the plaintiff belonged to the last named class and had nothing to do with the drilling or the blasting of stone, his work being to remove the stones from the bottom of the quarry to the yard, under the directions of the foreman; that the header ran clear across one side of the quarry and, except at the place of the accident, the solid granite had been quarried therefrom, leaving it exposed in some places for a depth of fifteen or twenty feet; that said header formed the bank of that side of the quarry, and after the granite in front of it was removed, the header was left standing as and for the bank of the quarry.

*John W. Gordon* and *Fred L. Laird* for the defendant.

*J. Ward Carver* and *S. Hollister Jackson* for the plaintiff.

WATSON, J. At the close of the plaintiff's evidence, defendant moved for a directed verdict in its favor on the grounds, (1) that the evidence does not show negligence by the defendant; (2) that if any negligence is shown, it was the negligence of a fellow servant; (3) that the plaintiff was on an equality with defendant in knowing of the danger which resulted in his injury, and being so on an equality he can not recover; (4) that the plaintiff is confined by his declaration to negligence by defendant in having, maintaining, or leaving said bank or wall of granite in an unsafe position by reason of stones on and at the top thereof becoming loose, unstable, and liable at any time to fall into the quarry and injure anyone there working, all of which defendant well knew, there being no allegation of a failure to give, or of a duty to give, warning of any danger on the part of anyone; (5) that if there was any negligence aside from that of a fellow servant, it was contributory negligence by the plaintiff; (6) that the uncontradicted evidence shows that defendant had appliances, equipments, and competent men on the quarry to make the place safe; (7) that the failure of the workmen to carry out the instructions in making the place safe was not a matter for which defendant must answer in this action.

The motion was overruled, to which defendant excepted. No evidence was introduced by the defendant.

The evidence, viewed most strongly in favor of the plaintiff as it must be in determining the questions raised by the exception to the overruling of this motion, fairly and reasonably tended to show the facts appearing in the statement of the case.

Regarding the duty of defendant to provide the plaintiff a reasonably safe place in which to work, it is argued in behalf of the defendant that this case is so like the case of *Conroy's Admx.* v. *Nelson,* 86 Vt. 175, 84 Atl. 737, as to be governed by it. In that case the intestate was the rockman of a certain incline in a slate quarry. On the day of the accident he was engaged in quarrying slate rock in that incline, having three helpers under him, one of whom was there to help the intestate in the work of blasting then to be done. At the place named there was a head of slate projecting from the butt of the quarry with a supporting pillar of rock underneath it. Holes had been drilled underneath this projecting head of slate for the purpose of blasting out the supporting pillar of rock, so the head of slate could be freed in the process of quarrying. Under orders from the foreman, the intestate fired the holes, and later noticing a crack he put powder into that and fired it. He then saw a small stone, weighing about fifty pounds, over where he and his helpers were working and right under the projecting head of slate. To get this small stone down, the intestate punched around it with a bar until it fell, followed within a few seconds by the big overhanging rock's tipping out and coming down upon him, producing fatal injuries. It was contended, as in the case before us, that the master was negligent in not furnishing the employee a safe place to work. In disposing of the case, this Court said that at the time in question the intestate was doing work along the line of the ordinary duties of his employment; that the getting out of the head of slate was the purpose and object of the blasting done to take away the supporting rock, and the holes fired were well calculated to cause it to fall; that the intestate and his fellow workmen were practically making their own working place as an incident to the quarrying being done; that every succeeding blast effected a change in the conditions and surroundings, and the dangers to which they were exposed were the direct result of their own operations; and that in such circumstances the

ordinary rule requiring the master to furnish the servant a safe place in which to work, does not apply.

The reason why the safe-place rule is held not to be applicable in such circumstances is, that the very work which the servant is employed in doing is of such a nature that its progress constantly produces changes in the conditions and surroundings, and consequently the hazards arising therefrom, to which the servant is exposed, are regarded as the ordinary dangers of his employment and as such assumed by him.

The essentials to the application of the rule applied in the Conroy case, are entirely lacking in the present case, where on the evidence the plaintiff and his helper were not engaged in a work that produced changes in the conditions and surroundings, and they had no part in producing the conditions which caused their injuries. In these circumstances, not that rule, (*Superior Coal and Min. Co.* v. *Kaiser*, 229 Ill. 29, 82 N. E. 239, 120 Am. St. Rep. 233; *Casey* v. *Kelly-Atkinson Constr. Co.*, 240 Ill. 416, 88 N. E. 982; *Kranz* v. *Long Island Ry. Co.*, 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716; *Highland Boy Gold Min. Co.* v. *Pouch*, 61 C. C. A. 40, 124 Fed. 148; *Corby* v. *Missouri & K. Telph. Co.*, 231 Mo. 417, 132 S. W. 712; *Ft. Smith & W. R. Co.* v. *Ketis*, 26 Okla. 697, 110 Pac. 661; *Novy* v. *Breakwater Co.*, (Conn.) 92 Atl. 668,) but the safe-place rule, requiring the master to exercise reasonable care and prudence to provide his servant a reasonably safe place in which to do the work assigned him, is applicable. *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416, 74 Atl. 99; *Davis* v. *Central Vermont R. R. Co.*, 55 Vt. 84, 45 Am. Rep. 590; *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, 74 Atl. 108, 24 L. R. A. (N. S.) 128; *Dailey* v. *Swift & Co.*, 86 Vt. 189, 84 Atl. 603.

The foreman on the quarry in the afternoon when the blast was fired and also the next morning when the plaintiff was injured, had full charge there, (the superintendent being absent,) and consequently he was intrusted with the performance of this duty resting upon the master. He stood in the place of the master, was vice-principal, and notice to him by the powderman immediately after the blast of the dangerous condition of the header, was in law notice to the master, and for the foreman's negligence, if any, in not remedying the defect so as to make reasonably safe the working place where the plaintiff was engaged when injured, before sending him there,

the master is liable. *Davis* v. *Central Vermont R. R. Co.,* cited above; *McKane* v. *Marr & Gordon,* 79 Vt. 13, 63 Atl. 944; *Comeau* v. *Manuel & Sons Co.,* 84 Vt. 501, 80 Atl. 51. Whether upon the evidence the foreman was in fact guilty of such negligence, was a question for the jury. The fact, if it be a fact as argued by defendant, that it was the duty of the powderman (a fellow servant) after firing the blast, to remove all loose stones resulting therefrom, makes no difference; for if the master knew, or in the exercise of due care ought to have known, of the unsafe condition before the accident, it was a breach of duty on its part not to exercise due care to remedy such condition, and the law will not look beyond the master and will not inquire by whose fault the omission actually occurred. This is in accordance with the ruling in *Vaillancourt* v. *Grand Trunk Ry. Co.,* and in *Marshal* v. *Dalton Paper Mills,* both cited above.

Nor can the motion for a verdict be sustained upon the ground that the plaintiff was on an equality with the defendant in knowing of the danger resulting in his injury; nor upon the ground of contributory negligence. These two grounds of the motion are so closely related upon the evidence that they may be more conveniently disposed of together. As already seen the tendency of the evidence was that the attention of the foreman was called to the unsafe condition of the header directly after 'the blast; while the plaintiff, though he looked at the wall of the quarry above when going to his assigned place of work, could not see the bulge in the header, nor could he see it from any place where he had been working since it had existed; nor upon some of the evidence did he have any knowledge or information thereof, though there was some evidence of more or less force tending to show that he was told of the danger within five minutes or a little more before the stones fell. Moreover, it being the duty of the defendant to exercise the requisite degree of care in furnishing the plaintiff a reasonably safe place in which to work, the latter, in the absence of knowledge or information .to the contrary, had the right to assume that defendant had performed its duty in this respect. Upon the evidence, each of the questions named was for the jury. *Lincoln* v. *Central Vermont Ry. Co.,* 82 Vt. 187, 72 Atl. 821, 137 Am. St. Rep. 998; *Vaillancourt* v. *Grand Trunk Ry. Co.,* cited above; *Marshall* v. *Dalton Paper Mills,* cited above.

Since the foregoing in effect disposes of all the grounds presented, the motion for a verdict was properly overruled.

The powderman testified in direct examination to trying the stones in the bulge, with a bar, immediately after the blast, and to telling the foreman, there present, that they did not look right—it was not safe. In cross-examination by defendant's attorney the witness was asked: "You mean to say as powder-man of five years' experience and as a quarryman of long experience, if you knew of a dangerous place you were not to communicate it?" The witness answered that he generally took it down; that it would be his duty to tell others; that the reason he did not tell others was because he did not see them and because there was another man over him, and he supposed that after the blast was fired a man coming near it would look to see if there was danger; that the men were to look out for themselves if he did not tell. In redirect examination the witness stated that there was a reason why he did not stay and work on the bulging stones. He was then asked to state the reason. To this defendant excepted on the ground that the reason was not communicated to it. The witness answered that. the foreman told him to go to another part of the quarry and fire some holes. There was no error in this ruling. The evidence tended to show that the. unsafe condition of the header was allowed to remain by reason of the neglect of the vice-principal, rather than by the neglect of a fellow servant, as claimed by defendant. Besides, in view of the cross-examination, it was within the court's discretion to permit in redirect examination, the evidence objected to, as explanatory of the action of the witness at the time to which his testimony related. *Hyde* v. *Swanton,* 72 Vt. 242, 47 Atl. 790.

Defendant made several requests to charge looking to the application of the fellow-servant doctrine, all of which were refused, and defendant excepted. The alleged negligence of the defendant was its failure to provide a safe working place. As to that, we have already said enough to show that the fellow-servant rule had no application, because the duty rested by law upon the master, and for any negligence in its performance by a delegated person the master is responsible.

Defendant also requested the court to charge that it could not be liable for the acts of an employee on the occasion in question, who in the necessary transaction of the work might

render the place unsafe for the plaintiff. This request was properly refused for the simple reason, if for no other, that it failed to require consideration of the element of defendant's knowledge or information of the unsafe condition so produced and, consequent on such knowledge or information, its duty to make the place safe, before sending the plaintiff there to work. For the same reason, if for no other, defendant's requests concerning transitory and passing risks and dangers, were also properly refused. The dangerous condition of the header had existed since between two and three o'clock in the afternoon of the day before the accident, and the evidence tended to show knowledge thereof all that time by the vice-principal, without any steps being taken to remedy it.

Defendant further requested the court to charge, that if the plaintiff had means of knowing the result of the blast and the condition of the bank equally with the defendant, he could not recover on the ground of the failure of the defendant to furnish him a safe place to work. There was no error in refusing this request. It ignored the right of the plaintiff, in the absence of knowledge or information of the defect, to assume that defendant had performed its duty by way of providing a safe place for him to work. Another request along the same line, that if the jury should find from the evidence that the danger was equally obvious to the defendant and the plaintiff, they were upon an equality and the defendant was not liable. This request takes no notice of the important fact (within the tendency of the evidence) that the defendant's attention was called to the defect in the header immediately after the blast, the plaintiff having no knowledge or information concerning it; neither does it take notice of the fact (also within the tendency of some of the evidence) that the plaintiff was notified of the impending danger just before the accident occurred. Since this request was based upon a part only of the important evidence bearing upon the conclusion stated therein, it was unsound in law and properly refused. *Hyde* v. *Swanton,* cited above; *Ashley* v. *Hendee,* 56 Vt. 209; *Sherwin* v. *Rutland R. R. Co.,* 74 Vt. 1, 51 Atl. 1089; *Taplin & Rowell* v. *Marcy,* 81 Vt. 428, 71 Atl. 72.

Defendant requested the further charge that under the declaration the plaintiff could not recover for failure to warn him that the stones were liable to fall. The record shows that

the plaintiff, in his declaration and on the evidence, based his right of recovery solely on defendant's negligence in not furnishing him a safe place to do the work assigned him; and the case was submitted to the jury on the ground of such negligence and no other on the part of the defendant. This being so, there was no occasion to charge, negating the right to recover on any other basis, and the request was rightly refused.

*Judgment affirmed.*