Coös,
May 4, 1943. } No. 3411.

FRANK O. STONE *v.* HARLAND B. HOWE.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Louis E. Wyman* orally), for the plaintiff.

*Harland B. Howe* (by brief and orally), *pro se.*

PAGE, J.   I. The claim that evidence of the Vermont law could not be received without specific declaration of that law is not in accordance with our practice.   The declaration in tort of facts occurring in New Hampshire assumes that the local law is controlling, even though it be not pleaded.   When the declaration shows that the plaintiff seeks to recover for negligence in Vermont, with consequent damages there, the applicability of Vermont law follows as a matter of course.   If the law of Vermont is here ascertained in part by evidence, it is also true that we take judicial notice of it. *Saloshin* v. *Houle*, 85 N. H. 126.   It is not a fact that must be pleaded.   Even if Vermont law had not been ascertained in the trial

court, we would ascertain it here, without amendment of the pleadings. *F. C. Adams, Inc.* v. *Thayer*, 85 N. H. 177; *Garapedian* v. *Anderson, ante*, 390.

II. On the motion for a directed verdict the evidence, taken most favorably for the plaintiff, shows that the plaintiff went to work for the defendant on the morning of August 1, 1940. On that day he raked hay in the meadow and helped get the hay to the barn. If he entered the barn that day, it was not to go into the portion where the hay was stored.

The barn had a second floor, where the hay was stored. This floor was solid except for three holes through which the hay could be pitched down to the livestock. One of these was near the west end, the end of the barn from which the hay was put in, one in the middle, and one in the east end. The last was the one involved in the accident. The hole measured something in excess of four feet each way. Surrounding each hole, and rising from the second floor, were chutes constructed of four uprights to which were nailed transverse boards at irregular and well-spaced intervals. The holes were uncovered, and no provision was made for covering them. Access to the hayloft was by a ladder in the middle chute. The distance from the middle chute to each of the others was slightly over nineteen feet. The heights of the chutes varied slightly; that of the east chute, involved in the accident, was ten feet and three inches above the loft floor.

The hay was put into the barn through an opening in the west end by means of a fork that ran on an overhead track. It was dropped by the fork at the back end of the barn, near the east chute. On August 1 the plaintiff did not go into the loft, and saw nothing of the progress of the work there. It was the custom each morning for the men to spread the hay back — mow it back — from the middle of the barn, where the hay-fork had dropped it, to the sides. On the morning of August 2 the plaintiff went to the loft for the first time, by way of the ladder in the middle chute, and helped to mow the hay. He testified that when he went up, the hay was so high that the top of his head came to the track of the hay-fork. If he were believed, in spite of the contradictory testimony of others, he stood at least four feet above the top of the east chute, and there was at least that much cover of hay over it. He said that he saw neither the west chute nor the east chute, and that it was rather dark, since the hay partially covered the windows. He further said that nobody warned him about the existence of the end chutes that he failed to

see, and though this was disputed, the jury could have found that he had no warning or instructions.

Early on August 3 the plaintiff again went aloft to mow the hay, which he said was then so high that he could not stand erect under the track of the hay-fork. While at work, he fell through the east chute to the ground floor and received the injuries complained of.

The defence of assumption of risk in the circumstances presented is not an absolute one. Under Vermont law there is understood to be an absolute assumption by the servant of risks inherent in the service, "the natural, ordinary and obvious risks incident to the employment," those existent without the negligence of the master. This seems in effect merely the announcement that a servant cannot recover unless he is injured in consequence of the failure of the master to exercise some duty of care owed to the servant. If he is injured as the result of the master's breach of the duty of due care, the risk is said to be extraordinary, and it is assumed only if the servant knew or ought to have known of the dangerous condition and comprehended it, or must be taken to have known and comprehended it. *Carleton* v. *Company*, 88 Vt. 537, 549; *Duggan* v. *Heaphy*, 85 Vt. 515, 525.

The question, then, is whether the defendant had any duty of care with respect to the plaintiff. If he did, the failure in performance of the duty on the part of any of the defendant's agents, whether they be called fellow-servants or not, is the failure of the master. The master's duty with respect to the safety of the work-place is a continuing one, and if the place, though once safe, becomes temporarily unsafe, and the master in the exercise of due care ought to have known of the unsafety, he owes the duty of reasonable care to remedy the condition, which is regarded as extraordinary. *Marshal* v. *Company*, 82 Vt. 489, 499, 502.

This rule does not apply when the work is of such a nature that the servant is constantly producing changes in the conditions and surroundings, and consequently the hazards. In that case the hazards are regarded as "ordinary" and the servant assumes them as a matter of law. But if the hazards are increased by what other servants do, and the servant suing has no part in increasing them, then they are "extraordinary," since the master still has the continuing duty to exercise reasonable care to provide a reasonably safe place. *Lassasso* v. *Company*, 88 Vt. 526, 533. As will be later noted, the plaintiff findably had no part in the creation of the conditions that existed when he was first assigned to work in the loft.

The risks he there encountered must be treated as those for which the defendant may be held responsible.

The lack of a proper covering for the hidden holes might be found to be due to the want of care to make the place reasonably safe and keep it so. *Severance* v. *Company*, 72 Vt. 181; *Dunbar* v. *Railway*, 79 Vt. 474. Whether or not the absence of a guard or covering rendered the place unsafe, and if so whether the lack of safety was due to negligence, were questions of fact for the jury. *Dailey* v. *Company*, 86 Vt. 189, 192. Whether the defendant ought to have known about the lack of protection, and whether he had proper inspections made at suitable intervals were also jury questions. *Cross* v. *Company*, 90 Vt. 397, 407, 408.

Since the jury might properly find negligence in one or the other of these respects, the next question is whether the plaintiff assumed the risk negligently created by the defendant. The tests have been variously phrased. There is no assumption in such a case unless the servant "has knowledge of the danger thereby caused, and voluntarily continues in the employment." *Carbine's* v. *Railroad*, 61 Vt. 348, 351. Actual knowledge is not necessary. The plaintiff must show that "he neither knew nor was negligent in not knowing." *Dumas* v. *Stone*, 65 Vt. 442, 444. Another phrase is "knew or ought to have known." *Severance* v. *Company*, *supra*, 182. The risk is not assumed unless the plaintiff "knew and comprehended it, or it was so plainly observable that he will be taken to have known and comprehended it." The burden of proof here is on the plaintiff, but he is under no duty as a matter of law to exercise care to discover the danger, since he may assume properly that the master has performed his duty of care. Simply stated, the test is "whether he knew and comprehended it, actually or presumably." *Dunbar* v. *Railway*, *supra*, 476, 477.

It does not necessarily preclude the plaintiff that he could have seen the unprotected hole from below had he looked. His experience in this work-place was slight. He had seen the work-place only once before the day of the accident, and had not actually seen the danger and cannot be taken conclusively to have comprehended it. He had no occasion to inspect the place for dangers not obvious, and he had the right to rely on the presumption that the defendant had performed his duty unless there was something that would have indicated the contrary. It cannot be said as a matter of law that "he knew and comprehended the danger, or in the circumstances of the case will be taken to have known and comprehended it." There

was evidence to sustain his burden of proof, and the case was one for the jury. *McDuffee's Adm'x* v. *Railroad*, 81 Vt. 52, 69; *Marshal* v. *Company*, 82 Vt. 489, 502; *Vallancourt* v. *Company*, 82 Vt. 416, 435, 436; *Cross* v. *Company*, 90 Vt. 397; *Garfield* v. *Company*, 91 Vt. 315, 321.

The findable inexperience of the plaintiff properly raised the jury question whether the defendant was negligent in not warning the plaintiff. If he had known of the condition, there would have been no need of notice. *Carbine's* v. *Railroad, supra*, 353; *Burleson* v. *Company*, 86 Vt. 492, 498; *Wiggins* v. *Company*, 83 Vt. 365, 370. In the case of inexperience, however, the duty to give warning may arise. *Hayes* v. *Colchester Mills*, 69 Vt. 1, 6, 7. The duty may exist even when the inexperienced servant is an adult. *Morrisette* v. *Railway*, 74 Vt. 232; *Sias* v. *Company*, 79 Vt. 224, 231. "Where there are hidden or latent dangers, though incident to the employment, of which the master knows, or in the exercise of reasonable care ought to know, and which he has reason to believe the servant does not know, or from ignorance or inexperience is not capable of understanding or appreciating, and so will not be able to protect himself from injury because of them, it becomes the master's duty to give suitable warning and instructions concerning such dangers." *Carleton* v. *Company*, 88 Vt. 537, 546, 550. "If the plaintiff was inexperienced in the work, and ignorant of the risks . . . and this was known or ought to have been known to the defendant, it was the defendant's duty to caution and instruct the plaintiff regarding them." *Garfield* v. *Company, supra*, 321. "If it was a risk of which the plaintiff was excusably ignorant, it was the duty of the defendant to instruct and caution him regarding it. There was evidence tending to show that the risk was not obvious, and that the plaintiff had no knowledge of it, and that no instruction or caution regarding it had been given." *Sanderson* v. *Railroad*, 91 Vt. 419, 424. This issue, on the conflicting evidence, was for the jury.

The want of instructions in *Landing* v. *Fairlee*, 112 Vt. 127 did not make a case for the jury, since it conclusively appeared that the plaintiff knew all about the condition of the work-place and fully comprehended the dangers. If this were that case, as it is not, the motion for a directed verdict should have been granted.

III. The motion to set aside the verdict requires separate treatment. The Presiding Justice instructed the jury that if they found that the work in which the plaintiff was engaged was of such a nature

that its progress, while he was working there, constantly produced changes in the conditions and surroundings, the resulting danger was an ordinary one which the plaintiff assumed, and in that case he could not recover. There was no exception, and the charge became the law of the trial. The defendant therefore takes the position that there is no evidence to support any other finding than that the hay put into the barn by the plaintiff and other workmen, while he was there working, covered and concealed the chute, and that the resultant danger was assumed in accordance with the law of the trial.

We are not concerned now with the question of the correctness of this charge. Nor are we tempted to carry the construction of Vermont law to the point of saying (compare *Lassasso* v. *Company*, 88 Vt. 526) that a servant who does not see what his fellow-servants do to increase the dangers, and is not present at the spot, does not assume the risks. We assume for argument that the plaintiff assumed the risk of changed conditions if he had any part in putting the hay into the barn, even though he was outside and by no possible chance could see what changes were being made and how they affected the safety as a work-place of a hayloft which he had never entered.

On the question of true assumption of risk the defendant was forced at the trial to take the position that on the morning of August 2, when the plaintiff first entered the loft, the hay was one foot below the top of the chute where the plaintiff fell the next day; that the top of the chute was perfectly obvious, and that his head farmer then warned the plaintiff of the obvious danger. As already noted, the facts testified to by the plaintiff were completely at variance with those claimed by the defendant on the testimony of his head farmer.

For purposes of his motion to set aside the verdict, the defendant accepts the plaintiff's testimony that the four feet of hay covered the chute on the morning of August 2, and argues that, accepting the testimony of his witnesses that the top of the chute showed on August 1, the cover of hay must have been put there while the plaintiff was working for him, and that no other conclusion can be reached.

The jury were not circumscribed to the choice of testimony made by the defendant. The only witness to the height of the hay on August 1 was the head farmer, who said that it was nearly even with the top of the chute when the plaintiff went to work. The same witness testified that on the morning of August 2 the hay was within a foot of the top of the chute. Another employee said that the top of the chute then showed a little. The defendant could not ask that

the jury disbelieve his witnesses as to the situation on August 2 and believe one of them as a matter of law as to the situation on August 1. They could disbelieve the head farmer as to both days. One reason for their disbelief might be the very inconsistency of the positions taken: (1) that while the plaintiff was working on August 1 enough hay was put into the barn to change the level from a foot below the top of the chute to one rather more than four feet above it; (2) that the level was altered from "nearly even with the top" on August 1 to "within a foot of the top" on August 2, indicating a very slow "covering process." It might well have appeared to the jury that there was something wrong with the memory of the head farmer, in consequence of which they would discard his evidence entirely. Believing the plaintiff, they would then have no evidence to warrant a finding that the top of the chute was covered while the plaintiff was working for the defendant.

*Exceptions overruled.*

All concurred.