## BERNHEIMER BROS. *vs.* GEORGE BAGER.

*Obligation of Master to Provide Safe Place in Which Servant is to Work—Duty Not to be Delegated to Independent Contractor or Fellow-Servants—Fall of Prop Supporting Adjoining Wall Causing Injury to Workman—Evidence to Show Improper Construction—Instructions—Damages.*

When a man is employed by a land owner to work on the foundation for a building, he has a right to assume that a prop or beam, placed to support the wall of an adjoining building, under which prop he is to work, has been secured with reasonable care, and the risk of danger from the falling of such prop because not securely placed, is not a risk incidental to his employment and assumed by him.

If in such case the prop was made to fall by an act of a servant of an independent contractor, employed to remove old structures, the land owner is not for that reason relieved from liability, if he had not originally placed the prop with reasonable care.

The obligation of a master to provide a safe place in which his servant is directed to do work cannot be delegated to an independent contractor.

Plaintiff was employed by the defendant as a laborer to work on the excavation for the foundation of a building. One end of a long prop or beam was placed against the wall of a house on the adjoining lot and the other end rested on a joist placed against the wall of a building being torn down, and on brtcks in a bank of sand which was the footing of this wall. An independent contractor was employed to tear

down the old building on defendant's lot and excavate the cellar and this included the ultimate removal of the bank of earth on which the prop rested. There was some evidence that an employee of this contractor weakened the support of the prop by digging into this bank of earth. Something caused the prop to slide off the joist and fall down, causing an injury to plaintiff who was at work under it, to recover damages for which this action was brought. *Held,* upon an examination of the testimony, that the evidence was legally sufficient to authorize the jury to find that the prop had not originally been safely erected, and that consequently the defendant is liable to plaintiff for the failure to use reasonable care to provide for him a safe place in which to work.

*Held,* further, that the defendant is not relieved from this liability on the ground that the immediate cause of the fall of the prop was the act of a servant of the independent contractor, inasmuch as the place was originally made unsafe by the mode in which the prop was erected.

*Held,* further, that it is no defense to an action that the injury was caused by the negligence of plaintiff's fellow servants, either in erecting the prop or digging away the bank of earth, since the duty of a master to provide a reasonably safe place for his servants to work in cannot be delegated.

*Held,* further, that there is no evidence to support an instruction to the jury that the plaintiff assumed the risk because he saw the bank of earth on which the prop rested being dug away.

A prayer is liable to mislead the jury which instructs them that the burden of establishing by a satisfactory preponderance of proof, the state of facts alleged in the declaration, rests upon the plaintiff, and that if the testimony in the case is such as to leave the minds of the jury in a state of even balance as to the truth of the allegations in the declaration, the verdict must be for the defendant.

An instruction as to the measure of damages in an action for personal injury caused by defendant's negligence, held to be correct.

The admission of incompetent and irrelevant evidence is not reversible error when the evidence is of such a character that it could do the appellant no injury.

*Decided June 25th, 1908.*

Appeal from the Court of Common Pleas of Baltimore City (HARLAN, C. J.), where there was a judgment on verdict for the plaintiff for $2,000.

*Plaintiff's 1st Prayer.*—If the plaintiff was employed by the defendants to work in their building, then it was the duty of

the defendants to use all reasonable care to provide and maintain in and about the place where the plaintiff was put to work by them, safe, sound and suitable structures and instrumentalities. *(Granted.)*

*Plaintiff's 4th Prayer.*—If the jury find for the plaintiff, in estimating the damages they are at liberty to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of such injuries, and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those pursuits and employments, for which in the absence of said injuries he would have been qualified, and also the physical and mental suffering to which he was subjected by reason of said injuries, and to allow such damages as, in the opinion of the jury will be a fair and just compensation for the injuries which they may find the plaintiff has sustained. *(Granted.)*

*Defendants' 8th Prayer.*—If the jury find from the evidence that the prop or brace mentioned in the evidence was constructed or placed in position in such manner as to be in danger of falling, if the bank upon which it rested, if they shall so find, was disturbed or removed, and that the same was obvious to the plaintiff from the position in which he was placed at the time of the accident, and that the plaintiff continued to work under said prop or brace, if they shall so find, after he saw or could have seen by the use of ordinary care and prudence the witness Mosby digging away or removing the said bank, if they shall so find, then the plaintiff assumed the risk of his position and the verdict must be for the defendants. *(Refused.)*

*Defendants' 10th Prayer.*—That the burden of establishing by a preponderance of proof satisfactory to them the state of facts alleged in the declaration rests upon the plaintiff: and if the testimony in this case should be such as to leave the minds of the jury in a state of even balance as to the truth of the allegations in the declaration, the verdict must be for the defendants. *(Refused.)*

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*Albert E. Donaldson* (with whom were *Robert Crain, O. F. Hershey* and *Walter L. Clark* on the brief), for the appellants.

*S. S. Field* (with whom was *Philip M. Golden* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellants for injuries sustained by the former by reason of the alleged negligence of the latter. The defendants were engaged in the construction of a building in the city of Baltimore, and the plaintiff was employed by them, as a laborer. At the time of the injury he was at work in the cellar, on the excavation for the foundation. The lot of the appellants fronts on the north side of Fayette street and runs back to Marion street—adjoining on the west a building known as Nixon's Hotel. In making a foundation of sufficient depth, it became necessary to underpin a part of the Nixon wall, as the foundations of the Bernheimer building went below the level of those of the Nixon property. A prop was put against the Nixon wall, at a point about 25 feet above the ground, and the other end rested on a piece of joist placed against the rear end of a wall of the kitchen of one of the buildings on the appellants' property, which was being torn down. The witnesses differed as to the length of the prop, but it was apparently about forty-two feet long. The joist which was two inches thick and twelve inches wide rested, at the bottom, upon some bricks which were in a bank of sand and clay and described as the footing of the wall. A few feet above the bank a cleat was nailed to the joist, and the lower end of the prop rested on it. The prop was constructed of two timbers about six by six inches, spliced together by boards six inches wide and two inches thick nailed on the four sides, and there was a brace under it made by what is called a king piece which was at right angles to it, and from the end of that,

boards were run up obliquely to the prop for the purpose of making it more rigid. Boards were also run from the prop to the wall of a house on Fayette street, which was parallel with the prop, and were fastened to the window frames of that house. There were also some props against the house on Fayette street which extended under the large one spoken of, although not placed there to support the latter. The appellee was working under the main prop when it fell, and one of the boards which was broken off struck him, causing the injuries complained of.

Two exceptions were taken to the admissibility of evidence, but as the first question objected to was answered in such way as could not possibly do the appellants any injury, it will be unnecessary to further refer to it. The plaintiff first offered evidence to show that the witness was competent as an expert, and then asked him a hypothetical question as to whether it was safe to construct a prop as therein stated. He replied that it was a hard question to answer and did not express an opinion. Another was then asked him, and the witness replied: "If, as you say, the board was supported on sand, and didn't have a wide base to support it, it naturally wasn't safe; sand makes a good foundation when confined and well surrounded." It is difficult to see how that answer could injure the defendants—especially when taken in connection with his cross-examination. What he said could scarcely be disputed. It is therefore useless to discuss those exceptions, for if there was any error in permitting the questions to be asked the answers were harmless.

The remaining bill of exceptions presents the rulings on the prayers. The Court granted the first, second, fourth and fifth offered by the plaintiff, and rejected all (eleven) offered by the defendants. It also overruled special exceptions to the second and third of the plaintiff, but as it rejected the third the special exception to it need not be considered.

We will first consider those of the defendants. The first, second and third sought to take the case from the jury on the ground that there was no legally sufficient evidence to entitle

the plaintiff to recover. As the first and third referred to the pleadings, we will examine the declaration. It alleges that the defendants "negligently and insecurely constructed" the prop, or beam, as it is therein called; "that because of the negligence and carelessness of the defendants in erecting and constructing said beam, insecurely and unsafely, said beam fell down striking the plaintiff while he was attending to his work, and without notice or warning;" and that "although it was the duty of said defendants to furnish said plaintiff a safe place to do his work and safe surroundings yet they neglected to do so and because of the negligent way in which the defendants erected and put in position, extending from one side of the building on which they employed the plaintiff to the other side thereof, a long heavy beam which fell *by reason of said defendants' negligence* and which the defendants knew *said beam* was dangerously constructed, but the plaintiff did not know it," etc. It will be observed that while the negligence relied on refers, for the most part at least, to the insecure and unsafe erection and construction of the beam, the *nar.* also alleges that the beam "fell by reason of said defendants' negligence"—not by reason of defendants' *said negligence.* Just what was intended by that expression is not altogether clear, but it apparently did not mean to confine the negligence to the erection of the prop—although it does not seem to us to be very material in considering these prayers. Mr. Preston, the building inspector of the city, and others said that the prop was safe in the way in which it was erected. Mr. Preston not only occupies that official position, but he was also in the employ of the appellants and was one of the defendants in this case—although it was subsequently *non prossed* as to him.

But, notwithstanding the evidence of Mr. Preston and others, there were facts before the jury from which they were authorized to conclude that the prop was not securely and safely erected. It could not be expected that those that had been connected with its erection would testify to any thing other than what they did—indeed, it would be doing them an injustice to say that they did not believe that it was prop-

erly erected, as it would have been gross, if not criminal, negligence on their part to place it in such a position, unless they did so believe.    But the plaintiff and the jury were not concluded by their opinions.    It was admitted that when the prop was erected, a contract had been let to George W. Howser & Company to tear down all the old buildings on the lot and excavate the cellar, which included the ultimate removal of the bank upon which the prop rested.    Of course, we do not mean that it was intended by the appellants, or those acting for them, that the bank should be removed while the prop was still on it, but it must have been understood that they would excavate near the bank and they knew they would eventually remove it.    Mr. Townsend, the foreman of the appellants, testified that the bank was four or five feet wide on the top, sloped down on a grade of about forty-five degrees and was about six feet high.    He also said that the joists, against which the lower end of the prop rested, was at or about the end of the wall of an old kitchen, in the rear of the lot..

At the time of the accident the kitchen wall had been taken down to the first floor, and the joists and the floor had been taken out.    The wall was still about seven or eight feet above the bank, and there was a cross wall at the corner which Mr. Townsend said strengthened it.    The joist, set up against the wall, was not nailed or fastened to it, and in the language of the plaintiff; "It led down into the ground a little, only for a short ways," "there were only two courses of brick there and they were loosened, and there was no strength at all to carry the prop, except just the footing where it was on."    It was shown that before the accident he did not know how the prop was fastened or how deep the joist was in the bank, and that no warning had been given to him about it.    Mr. Townsend, Mr. Preston and other witnesses said that it was not necessary to fasten the joists to the wall, or put the end of it in the ground, as the weight and pressure of the prop would keep it in position.    But the fact is that something caused the prop to slide off the joist, and the east end of it fell clear

(north) of the corner of the wall, and the joist also fell down after the prop fell. The west end of the prop, after it fell, rested on the three props which had been placed against the north wall of the building on Fayette street—they having undoubtedly been the means of saving from injury, possibly death, other men working under the large prop.

There was therefore some evidence before the jury from which they could properly draw the inference that the prop had not originally been safely erected—especially in view of the fact that the ground was intended to be excavated at and about the bank, and that the bank itself would eventually be removed.    If the appellants' theory be correct—that the accident was occasioned by a colored man named Mosby digging on the bank—then there did occur just what might reasonably have been anticipated.    Mosby testified that on the morning the prop fell he was told by his employer, Mr. Shott, of the firm of Howser & Co., to dig on the bank, and that he was digging about two feet from the foot of the prop when it fell; that he did not strike it and no one had warned him not to dig.    Mr. Townsend testified that he had notified either Mr. Shott or Mr. Radecke the foremen of Howser & Company, not to allow the bank of earth to be disturbed, but he was not certain which of them he so notified and thought it was Mr. Radecke.    At any rate Mosby said Mr. Shott told him to do the digging, and even if Mr. Townsend notified both of them, it only shows the necessity of not taking chances and merely relying on such instructions, instead of fixing the prop in the beginning in a way that it would not be liable to be thrown down by the carelessness or ignorance of others.    There was not even a notice placed on the bank, warning the workmen not to dig or otherwise disturb it.    There is certainly nothing in the evidence that would necessarily convince the jury that the joist, or some kind of timber, could not have been placed deep enough and be fastened to the wall, so as to make it safer than it was, and when it was known that a contract had been let to make the excavations, including that very bank, it was not an unreasonable precaution to require to be taken.    When

the lives and limbs of those who were to work in that place were at stake, the appellants, and those representing them, ought not to have been satisfied with the ordinary means of securing a prop from which there would be little or no danger, when somewhat extraordinary conditions existed—owing in part to their undertaking to place the control of the excavation in the hands of others.

The master's liability for personal injuries to his servant is one of the most familiar subjects in Courts of law, by reason of the great multitude of people occupying that relation, but the liability varies very much, according to the circumstances of each particular case. Certain general principles are, however, well established, and it only remains to apply some of them to the facts in this case. It is a fundamental rule that the master must exercise ordinary and reasonable care to avoid unnecessary injuries to his servant, in the course of his employment. While he is permitted to delegate to others certain duties there are some which he cannot relieve himself of, or avoid the responsibility for, if there be a failure to discharge them to the injury of the servant. One that is required of him, in this as well as in other jurisdictions is providing and maintaining safe machinery and appliances and a reasonably safe place for the work undertaken by the servant. Necessarily there are some exceptions to these as well as to most general rules. For example, where a place is out of repair and dangerous, and the employee undertakes to make it safe, he assumes the additional risk arising from the existing condition of the work or the place. *Eckhardt* v. *Lazaretto Co.*, 90 Md. 192. So if he accepts an employment, or continues in it, with knowledge of the danger, he cannot ordinarily hold his employer liable, and other like illustrations might be given. If such were not the law, an employer could not have repairs made in dangerous places, without in effect becoming an insurer of his employee.

But are such exceptions applicable to this case? There were, of course, certain risks which the appellee assumed, injuries from which his employers would not be liable for, but

when he went into the place where he was engaged to work he had a right to assume that his employers had exercised reasonable care in securing this prop, which had been erected before he went there, and that the place at which he had been put to work was reasonably safe. He was not engaged in making it safe, but was working in a place which presumably had been made safe, excepting in so far as the work he was doing was likely to make it unsafe. As was said in *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 368, quoted with approval in *Am. Tobacco Co.* v. *Strickling*, 88 Md. 504, "A master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the *master* who is to provide the place and the tools and machinery, and when he employs one to enter his service he *impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary.*" It was not suggested in the evidence that the appellee had any cause to suspect that there was any danger of this prop falling, and it cannot be denied that it was, as located, dangerous, unless it was properly secured. The bottom of the joist was far enough in the sand to be hidden and the appellee had the right to assume that the prop was safely erected. We are of the opinion, as we have already intimated, that there was sufficient evidence of the want of such reasonable care as was required in placing the eastern end of the prop to go to the jury, and the first, second and third prayers of the defendants were therefore properly rejected.

The defendants' fourth and seventh prayers were offered on the theory that as Mosby was in the employ of George W. Howser & Company, and they were independent contractors, there could be no recovery. It may be that the prop would not have fallen if Mosby had not dug away part of the bank, but inasmuch as there was some evidence that it was not originally placed as it should have been, that cannot relieve the appellants. We have already seen that they employed How-

ser & Co. to make the excavations, and that included in their contract was the removal of the bank on which the prop rested. There is not even any satisfactory evidence that the appellants, or their representatives, ever cautioned Mr. Shott, or anyone except Mr. Radecke, not to disturb the bank and the uncontradicted testimony of Mosby was that he was instructed by Mr. Shott to dig there. Mr. Shott doubtless believed that the appellants had properly secured the prop, and if it had been secured by putting the joist lower into the earth, or by fastening it to the wall, or both, the digging might, and in all probability would, not have disturbed it at all. It would be carrying the doctrine of independent contractor beyond what the law authorizes to permit an owner of property to thus insecurely erect a dangerous instrument over where his employees were to work, and then escape the result of his negligence by letting the work to be done to a contractor. The appellants were under obligation to use reasonable care in protecting their servants while they were engaged in the work, and could not thus shift the responsibility.

The general rule as to independent contractors is thus qualified by the authorities: "A person or corporation on whom positive duties are imposed by law cannot avoid liability for injuries resulting from failure to perform such duties, by employing a contractor for the purpose; nor, in such a case, is the fact that the injuries resulted from the contractor's negligence a defense." 16 *Am. & Eng. Ency. of Law*, 197. Illustrations of that rule are given and on page 199 of that volume it is said, "A master's duty to furnish to his employees a safe place to work cannot be delegated to an independent contractor." This Court has announced similar views in several cases. In *City & S. Ry. Co.* v. *Moores*, 80 Md. 348, after citing *DeFord's case*, 30 Md. 179, and *O'Donnell's case*, 53 Md. 110, we referred to *Water Co.* v. *Ware*, 16 Wall. 566, where the question is fully discussed, and added that there were many cases in this country and England to the effect that "when the employer owes certain duties to third persons or to the public in the execution of a work, he cannot relieve

himself from liability *to the extent of that duty*, by committing the work to a contractor." In *Bonaparte* v. *Wiseman*, 89 Md. 12, JUDGE SCHMUCKER, in considering the question, referred to DeFord's case, as holding that "the distinction is well established between the cases in which, when work is being done under a contract, an injury is caused by negligence *in a matter collateral to the contract and* those in which *the thing contracted to be done* causes the mischief. In the former class of cases the employer is not liable for the injury but in the latter he is." After quoting from *Ohio South. R. R. Co.* v. *Morey*, 47 Ohio St. 207, the general rule as to independent contractors, he further quoted from that case: "But this principle has no application where the resulting injury, instead of being collateral and following from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employee of an independent contractor." That doctrine was thus announced in *Moore's case, supra*: "Even if the relation of principal and agent, or master and servant, do not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work."

So without referring to other questions, such as the statement in the prayers that the undisputed evidence shows that Howser & Company were notified and warned by the appellants not to dig away or disturb the support, we think the fourth and seventh prayers were properly rejected.

The fifth, sixth, ninth and eleventh prayers relied on the defense of negligence by fellow servants—either in erecting the prop or digging away the bank. Without discussing the different phases of that question, presented by the prayers, a

sufficient answer to them is that the master cannot delegate his duty to provide a reasonably safe place for his servants to work in. *P., B. & W. R. Co.* v. *Devers,* 101 Md. 341; *Russell's case,* 88 Md. 571; *Baker* v. *Md. Coal Co.,* 84 Md. 19, and other authorities that might be cited.

There was no evidence to support the eighth prayer, in reference to the danger being obvious to the plaintiff or his seeing Mosby removing the bank. It is not only contrary to the uncontradicted testimony of the appellee, but is utterly so to the whole theory of the appellants, that they did not know that Mosby was digging at the bank. What was said in the recent case of *United Ry. & Elec. Co.* v. *Cloman,* 107 Md. 681, is sufficient to show that we do not approve of such prayers as the tenth. It was perhaps not as objectionable as it was in that case, but it was liable to mislead the jury. One illustration, in addition to what was said in Cloman's case as to the extent of injuries alleged in the declaration, will suffice to show how the jury might be misled. While it is true that a plaintiff in cases of this character must not in presenting his testimony show that he failed to use due care, yet if contributory negligence, or any distinct, affirmative matter of defense, be relied on by the defendant, the burden is on him to prove it, *Tucker* v. *State, use Johnson,* 89 Md. 471, and yet the jury might not understand the distinction, if a prayer like the tenth is granted.

From what we have already said, it is apparent that, in our opinion, there was no error in granting the first, second and fifth prayers of the plaintiff, or in overruling the special exception to the second. His third was rejected, and we do not understand the exception to the fourth to be urged. It is the ordinary prayer in reference to the measure of damages, and we see no ground for complaining of it.

It may in some respects be a hardship on the appellants to be held responsible for the injuries sustained by the appellee, but as we find no reversible error in any of the rulings of the lower Court and the case was properly submitted to the jury, the judgment must be affirmed.

> *Judgment affirmed, the appellants to*
> *pay the costs above and below.*