JOSEPH GOUPIEL v. GRAND TRUNK RAILWAY COMPANY.

February Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 5, 1920.

*Master and Servant—Playful Acts of Servant Not Within Scope of Employment—Dangerous Agency—Railroad Torpedo—Very High Degree of Care Required of Master—Knowledge of Engineer Imputable to Master—Judgment Affirmed on Ground Not Raised Below—Section Man Engaged in Interstate .Commerce.*

1.  Where the plaintiff, a section man, was injured by a flying piece of a railroad torpedo placed on the track by defendant's fireman, for his own amusement, to frighten plaintiff, the fireman's act was outside the duties of his employment, and the rule of *respondent superior* does not apply.
2.  A railroad torpedo should be considered a dangerous agency as a matter of law.
3.  It is the duty of a railroad company to take every proper precaution to prevent personal injury to those in its employ or otherwise lawfuly on its premises, from explosions resulting from unsafe keeping of inherently dangerous agencies, or from the carelessness of its servants, and the degree of care must be commensurate with the dangerous character of the instrumentality and the circumstances, and, in the case of a railroad torpedo, must be nothing short of a very high degree of care.

4. The question of defendant's negligence in not exercising due care to keep the torpedo safely, which was the proximate cause of plaintiff's injury, was for the jury.

5. If the defendant's engineer knew or ought to have known that the torpedo was on the track where it was likely to be exploded if the engine were moved, and that its explosion would probably result in injury to some of the section men standing nearby, his knowledge was the knowledge of the defendant, and it was bound to exercise due care not to expose the section men to unreasonable risks and dangers.

6. If the engineer, acting within the scope of his employment, without exercising the requisite degree of care, so moved the engine as to explode the torpedo, resulting in plaintiff's injury, the defendant is liable, irrespective of who placed the torpedo on the track.

7. The questions whether the engineer was acting within the line of his employment, and without exercising the requisite degree of care, were for the jury.

8. A judgment should be affirmed if it can be on any legal ground, whether raised below or not.

9. Section men, repairing the track of an interstate railway, were engaged in interstate commerce while standing beside the track to await the moving of an interstate train, which had stopped over the place where the repairs were being made.

ACTION OF TORT, under the Federal Employers' Liability Act, for negligently exploding a railroad torpedo that struck plaintiff in the chest. Plea, the general issue. Trial by jury at the April Term, 1918, Essex County, *Slack, J.*, presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*Amey & Cameron* for the plaintiff.

That the servant had departed from the course of his employment is a matter of defence, the burden of proof of which is on the defendant. *Texas & P. R. Co.* v. *Scoville*, 62 Fed. Rep. 730, 27 L. R. A. 179; *Cobb* v. *Columbia & G. R. Co.*, 37 S. C. 194, 15 S. E. 878; *Andrews* v. *Mason & Fort D. R. Co.*, 77 Iowa 669.

*John W. Redmond* for the defendant.

The act complained of was not done in fulfillment of any express or implied direction of the master, but solely for the personal amusement of defendant's servants; and neither plaintiff nor the engineer or fireman were engaged at the time in interstate commerce. *Ploof* v. *Putnam,* 83 Vt. 252; *Seaboard Air Line Ry. Co.* v. *Hess* (Fla.), 74 So. 500; *Cincinnati, Etc., Co.* v. *Wilson's Admr.,* 161 Ky. 640, 171 S. W. 430; *Rief* v. *G. N. R. Co.,* 126 Minn. 430, 148 N. W. 309; *Moyse* v. *Northern Pac. R. Co.,* 41 Mont. 272, 108 Pac. 1062; *Missouri, K. & T. Ry. Co.* v. *West,* 38 Okl. 581, 134 Pac. 655; *Vanordstand* v. *Northern Pac. R. Co.,* 86 Wash. 655, 151 Pac. 89; *Reeve* v. *Northern Pac. R. Co.,* 82 Wash. 268, 144 Pac. 63; *Hurst* v. *Chicago, etc., R. R.,* 49 Iowa 76; *Dickinson* v. *West End St. Ry. Co.,* 177 Mass. 365; *Ewald* v. *Chicago, etc., Ry. Co.,* 70 Wis. 420; *Roebuck* v. *Atch., etc., R. R.,* 99 Kan. 544, L. R. A. 1917E, 741; *Hobbs* v. *Great Northern R. Co.,* 80 Wash. 678, 142 Pac. 20, L. R. A. 1915 D, 503; *Kauffman* v. *Maier,* 94 Cal. 269, 29 Pac. 481, 18 L. R. A. 124; *Stodden* v. *Anderson, etc., Mfg. Co.,* 138 Iowa 398, 116 N. W. 116, 16 L. R. A. (N. S.) 614; *Bryan* v. *Ill. Cent. R. Co.,* 172 Iowa 631, 154 N. W. 1006; *Sullivan* v. *L. & N. R. Co.,* 115 Ky. 447, 103 A. S. R. 330; *Galveston, etc., R. R.* v. *Currie,* 100 Tex. 136, 10 L. R. A. (N. S.) 367; *International, etc., R. R.* v. *Cooper,* 88 Tex. 607; *Novelty Theater Co.* v. *Whitcomb,* 47 Colo. 110; *Canton, etc., Co.* v. *Pool,* 78 Miss. 147, 84 A. S. R. 620; *Ballard's Admx.* v. *L. & N. R. Co.,* 128 Ky. 826, 16 L. R. A. (N. S.) 1052; *Kirby* v. *L. & N. R. Co.,* 187 Ala. 443; *Hughes* v. *B. & M. R. R.,* 71 N. H. 279, 51 Atl. 1071, 93 A. S. R. 518; *Cleveland, etc., R. Co.* v. *Marsh,* 63 Ohio St. 236, 58 N. E. 821, 52 L. R. A. 142.

WATSON, C. J. The evidence, taken in the light most favorable to the plaintiff, fairly tended to show the facts stated below.

On July 3, 1915, about 8:30 o'clock in the forenoon, the plaintiff was engaged as a section man, with others in the same line of employment, working for defendant railway company, putting in ties on its main line from Island Pond, this State, to Portland, Maine, and from two to three hundred feet east of the depot at Wenlock in Vermont. When so there engaged, the defendant's way freight train, east bound from Island Pond to Gorham in the state of New Hampshire, stopped at Wenlock for half an hour or so, to put a car on the spur track. When so stopped and standing still, the train and the locomotive hauling

it were on the track of the main line. Just opposite the driving wheels of the locomotive, and standing about six feet away, were the plaintiff and other section men, waiting for the train to move away—it stood over the work being done by them.

There are two seat boxes in the cab to a locomotive like the one attached to this train. One is used by the engineer, and the other by the fireman, to sit on. These seat boxes are used for storing supplies, and in them torpedoes are kept for signaling purposes, being placed on the rails and exploded by running over them with the engine or cars, as a warning signal, in certain circumstances of danger. No. 15 of defendant's operating rules relates to the use of such signals, and specifies that torpedoes must not be placed near stations or public crossings, "nor where persons are liable to be injured by them." If they are exploded in signaling or otherwise without proper precautions being taken, the safety of persons in the vicinity is endangered by pieces of the metallic casing flying with great force in various directions.

The plaintiff is what is sometimes called a "Canadian jumper"; is nervous, and if another person touches him, shouting at the same time, or if anything thrown hits him, or if a loud noise be made, it makes him jump. While the train and the section men were standing as stated above, others of the latter and the fireman of defendant's locomotive who had got out of the cab, for their own amusement, and not otherwise, were having sport with the plaintiff, by throwing coal at him, and punching him in the ribs, to make him jump. In the course of this sport, and as a part of it, the fireman went up into the cab, got a torpedo, and put it on the rail just back of one of the forward driving wheels. He then motioned the engineer to start up. The engine was started by the latter, ran over the torpedo, exploding it, the plaintiff being hit by a flying piece of its metallic casing, and injured.

There was some discrepancy between the testimony given by the plaintiff and that given by John Bronson, one of the section men standing with the plaintiff at the time of the accident. No other witness gave testimony touching the particular matters following: The plaintiff testified that just before he was injured he saw the fireman and the engineer in the cab; that the witness was on the north side of the engine, which was the fireman's side; that the fireman was looking by the window of the cab, and the engineer was looking in the door—one was looking through

the cab window and the other was looking by the door. Bronson testified that he stood on the south side of the engine, which was the engineer's side; that before the accident took place, he saw the engineer in the cab, in sight of the fireman when the latter got out, and looking at him—the engineer was leaning over the cab window looking out when the fireman put the torpedo on the rail; that the fireman had been punching the plaintiff, fooling with him, when he went into the cab and got something and put it on the track, the witness not then knowing what it was, but afterwards knowing it was a torpedo because it exploded; that the plaintiff stood beside the witness, and might have seen the same thing had he been looking; that at the time the fireman took the torpedo out of the cab and placed it on the rail, the engineer was looking out of the cab window, and looking at the fireman, and looking out of the cab window when the fireman gave the signal to start; that the witness thinks he is right in saying he stood on the south side of the engine, but may be mistaken.

If the plaintiff and the witness were on the fireman's side of the engine, as the plaintiff testified, there may be some doubt as to whether the engineer could, from where he was, see all that took place—all the fireman did—for certain it is that he could not, from his seat in the cab, see the driving wheels on the opposite side of the engine, nor could he see the fireman when he put the torpedo on the track just back of the forward one of those wheels. It may be said that the inference is that the engineer left his seat and went to and sat on the fireman's seat box in the cab, and from there looked out. Other than by inference there was no evidence that he so changed his seat. Nor is the inference all that way; for it may fairly be inferred that, in the proper performance of his duties, he remained sitting on his regular seat, and was there when looking out through the door, as plaintiff testified, and was there when he started the engine, running over the torpedo. This latter view of the evidence is more favorable to the plaintiff than the other, and so must be adopted in reviewing the ruling, directing a verdict for defendant.

On the part of the fireman, what he did in the respects named, was carrying out the sport which was being had at the expense of the plaintiff's peculiarities. The plaintiff knew nothing of the torpedo's being on the rail, nor of the danger from that source before he was injured.

At the close of the plaintiff's evidence, defendant moved that a verdict be directed in its favor on grounds which may be comprehensively stated as follows: On all the evidence, viewed in the light most favorable to the plaintiff, the negligence complained of was done by the caprice of the fireman who placed the torpedo on the track, in the course of serving some purpose of his own in perpetrating a practical joke on the plaintiff, and not at all in the course of his employment, or in the performance of any duty which he conceived he owed the master. The motion was sustained, to which plaintiff excepted.

[1-3]  The evidence shows a case where, in the performance of the acts resulting in the injury to the plaintiff, the fireman, at least, was not carrying out any direction of the master, express or implied. He was doing acts outside the duties of his employment, to effect a purpose entirely his own. As to the particular acts of which complaint is made he was not the servant of the defendant. The case, therefore, if to be determined on the law governing responsibilities growing out of his acts as the sole proximate cause, falls within the doctrine laid down in *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 138 A. S. R. 1085, 26 L. R. A. (N. S.) 251, whereby the rule of *respondeat superior* does not apply. But we do not think the essential facts fairly within the tendency of the evidence make a case necessarily thus to be determined. Speaking aside from the evidence, it has been held, and we think rightly, to be common knowledge that danger signal torpedoes, such as are used in operating railroads, are loaded with some high explosive, and with a sufficient amount to cause a loud explosion; and that the danger connected with their explosion is too well understood to admit of doubt that such torpedoes should be considered as dangerous agencies as a matter of law. *Euting* v. *Chicago, etc., Ry. Co.,* 116 Wis. 13, 92 N. W. 358, 96 A. S. R. 936, 60 L. R. A. 158. As such agencies, they are classed with gunpowder, dynamite, and nitroglycerine; and though their use by defendant for signaling purposes was lawful, and (being provided for in its rules) presumably necessary to safety, it imposed upon the company the duty of taking every proper precaution to prevent personal injury to those in its employ, or otherwise lawfully on its premises, from explosions resulting from unsafe keeping, or from the carelessness of its servants. *Jacobs* v. *New York, N. H. & H. R. Co.,* 212 Mass. 96, 98 N. E. 688, 40 L. R. A. (N. S.) 41. The maxim, *sic utere tuo*

*ut alienum non laedas,* expresses the governing principle. This requires the doing of what a careful and prudent person would ordinarily do under the circumstances and exigencies of the particular occasion. *Bryant* v. *Central Vt. Ry. Co.,* 56 Vt. 710. In other words, the degree of care must be commensurate with the dangerous character of the instrumentality, and the circumstances. *Van Dyke* v. *Grand Trunk Ry. Co.,* 84 Vt. 212, 78 Atl. 958, Ann. Cas. 1913 A, 640. The use of signal torpedoes in the operation of railroads, being (presumably) necessary to the reasonable safety of employees and third persons, the degree of care required in the keeping of them for the purpose of such use, and in using them, should not be such as to make the company so keeping and using them absolutely bound to protect employees and third persons from injuries therefrom. Yet nothing short of a very high degree of care would be commensurate with the dangerous character of the agency, and that degree is measured by the care and prudence which careful and prudent men would exercise in the same or like circumstances. This is in keeping with the rulings made in two recent cases, one involving the question of liability in transmitting electricity, an agency inherently equally dangerous, by wires carrying a high voltage for distribution and use (*Wetherby's Admr.* v. *Twin State Gas Co.,* 83 Vt. 189, 75 Atl. 8, 25 L. R. A. [N. S.] 1220, 21 Ann. Cas. 1092), and the other, liability for negligence in connection with its use for lighting purposes. *Spinney's Admx.* v. *Hooker & Son,* 92 Vt. 146, 102 Atl. 53.

We are not unmindful of the fact that in some other jurisdictions, though not in all by any means, the rule of absolute liability seems to obtain in keeping for use and in using inherently dangerous agencies in connection with business operations. But the rule in this State, as given above, we think deals more justly with all concerned, employers, employees, and third persons, since it recognizes to a greater extent the economic necessity of employing modern methods and appliances in operations of business, so far as may be essential to efficiency, and can be done with reasonable protection against injury to servants, or other persons rightly within the zone of danger.

[4] As the case stood on the evidence, reasonable minds might differ as to whether there was negligence on the part of the defendant in not exercising due care to keep the torpedo safely, which was the proximate cause of plaintiff's injury, and

consequently it was a question for the jury. *Dailey* v. *Swift & Co.,* 86 Vt. 189, 84 Atl. 603; *Summerskill* v. *Vermont Power & Mfg. Co.,* 91 Vt. 251, 99 Atl. 1017.

[5-7]   Again, if the engineer knew, or in the circumstances ought to have known, that the torpedo was on the track where it was likely to be run over and exploded if the engine be moved, and that the section men were so dangerously near that the explosion of it where placed would probably result in injury to them, or some of them, unless special precautions be taken, such knowledge by the engineer was the knowledge of defendant.   In these circumstances, if proved, the law required the defendant to take due care not to expose the section men, of whom plaintiff was one, to unreasonable risks and dangers. *Noyes* v. *Smith,* 28 Vt. 59, 65 A. D. 222; *Euting* v. *Chicago, etc., Ry. Co.,* cited above. And if the engineer, acting within the scope of his employment, without exercising care commensurate with the dangerous character of such explosives, so moved the engine as to cause it to explode the torpedo, resulting in plaintiff's injury, the defendant is liable, and the law will not look beyond the master, nor inquire by whose fault the torpedo was placed there. *Vaillancourt* v. *Grand Trunk Ry. Co.,* 82 Vt. 416, 74 Atl. 99; *Lassasso* v. *Jones Brothers Co.,* 88 Vt. 526, 93 Atl. 266; *Drown* v. *New Eng. Tel. & Tel. Co.,* 80 Vt. 1, 66 Atl. 801; *Sanderson* v. *Boston & Maine R. R.,* 91 Vt. 419, 101 Atl. 40.   Whether the engineer was acting within the line of his employment, and without exercising the requisite degree of care, were questions to be determined by the jury.

[8, 9]   Finally, it is said by defendant that the verdict was properly ordered for the reason that neither the plaintiff nor any of his companions was engaged in interstate commerce in the transaction resulting in the injury.   Although this position was not taken below, it is open to defendant in urging affirmance of the judgment; for it should be affirmed if it can be on any legal ground. *Fairbanks* v. *Stowe,* 83 Vt. 155, 74 Atl. 1006, 138 A. S. R. 1074; *Wood* v. *James,* 93 Vt. 36, 106 Atl. 566.   The plaintiff and his companions were engaged in repairing the track of an interstate railway, stepping aside to the place where they were standing when the plaintiff was injured, only because the train, also interstate, was on the track which they were repairing, and over the very place where the repairs were being made.   Thus stepping aside to await the moving of the train, was no interrup-

tion of the character of their employment. The work of keeping a track used in interstate commerce in a proper state of repair while being thus used is so closely related to such commerce as to be in operation and in legal contemplation a part of it. *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. 648, Ann. Cas. 1914 C, 153.

The ordering of a verdict was error.

*Judgment reversed and cause remanded.*